UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERMAINE D'SHANN DODD,

    Plaintiff,

        v.                           CAUSE NO. 3:21-CV-153-JD-MGG

INDIANA DEPARTMENT OF
CORRECTION, et al.,

    Defendants.

OPINION AND ORDER

Jermaine D'Shann Dodd, a prisoner without a lawyer, filed a complaint alleging correctional officers at the Indiana State Prison subjected him to unconstitutional conditions and were deliberately indifferent to his medical needs. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d

599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted).

Dodd alleges that on February 6, 2019, he was transferred to a different section of the Indiana State Prison (ISP). His new cell had faulty light fixtures with wires protruding, no light bulbs, a toilet that did not flush, and a sink that had very high-pressure cold water. Officer Mao, who is not named as a defendant in this action, told Dodd he would report the situation to the custody and maintenance officers—Major Nowatski and Officer Boyini. Dodd does not allege he himself attempted to inform those officers or any others of the condition of the cell, nor does he allege he filed a grievance about it at that time.

On March 18, 2019, at approximately 11:00 PM, Dodd tripped over a ½" bolt protruding from the floor. His right shin, ankle, and heel were injured. Dodd informed Correctional Officer Swann, Sergeant Jackson, and other unnamed officers he needed help, but they refused for two days straight. He was told to submit a medical request form instead. On March 20, 2019, Lieutenant McNeal and Officer Crockett, neither of whom are named as defendants, assisted Dodd by calling the infirmary for assistance and transporting him there via wheelchair. Once he arrived, a nurse gave him Tylenol and an ice pack and told him to elevate his leg. He was given x-rays two days later. Dodd does not indicate the results of the x-ray in his complaint.[1] Dodd filed a grievance

---

[1] However, in a grievance appeal form dated May 2, 2019, which was attached to the complaint, Dodd states the results of the x-ray showed no broken bones. ECF 1-1 at 31.

about the events resulting in his injury on March 28, 2019, and the next day at approximately 9:25 AM, a maintenance crew removed the protruding bolt from Dodd's cell. The grievance response Dodd attaches to the complaint also indicates he was moved to a different cell sometime after the incident. *See* ECF 1-1 at 29.

On April 15, 2019, Dodd filled out a healthcare request form regarding his right shin, heel, and ankle. On April 29, 2019, he filled out another form requesting a specialist or therapy for his injuries. On May 2, 2019, a nurse assisted him by providing direction on stretches designed to loosen up his shin muscles and Achilles tendon.

In September of 2019, Dodd filled out two additional healthcare request forms because his Achilles tendon was "stiffening up sometimes and freezes and Charley Horses," it was painful to walk, he was feeling "discomfort [and] pain," and he was forced to walk with a limp. ECF 1 at 8. Dodd alleges he has not been taken to an outside hospital or therapist since his injury. Dodd has sued the Indiana Department of Correction (IDOC), Officer Swann, Sergeant Jackson, Major Nowatski, and Officer Boyini for injunctive relief and compensatory and punitive damages.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the

3

Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Here, Dodd alleges Officer Mao—who is not a defendant in this case—was aware his cell had faulty lighting, a toilet that did not flush, and a sink that sprayed cold water when it was turned on. Even assuming, *arguendo*, that these conditions were sufficiently serious to trigger Eighth Amendment protections, Dodd does not plausibly allege any of the named defendants were aware of those issues or knew he was at risk of being harmed. Dodd claims Officer Mao told him he would notify custody and maintenance of the conditions of the cell, but he does not allege any of the defendants received that notice or that he personally sought to inform them of the issues via grievance or otherwise at that time. He suggests Major Nowatski and Officer Boyini were in charge of the custody and maintenance departments, but that is insufficient to impute

4

knowledge to them or to subject them to liability under 42 U.S.C. § 1983. *See J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020) (officials cannot be held liable simply because they hold supervisory positions at the prison); *see also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) and *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (both noting that liability under 42 U.S.C. § 1983 is based on personal responsibility, and supervisory defendants cannot be held liable for the misdeeds of other prison staff). Thus, Dodd has not stated a plausible claim against any of the defendants regarding the general conditions of his cell.

As to the protruding bolt, Dodd does not allege that anyone—even Officer Mao—knew of its existence prior to his injury. The fact that a ½" bolt protruded from the concrete floor is not, in and of itself, a constitutional violation. There is no plausible suggestion the bolt was left in the cell intentionally. At most, the complaint suggests maintenance workers may have performed their inspection duties negligently. However, "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to support an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Moreover, Dodd admits that the day after he filed a formal grievance about the matter, the bolt was removed from the floor. He also attaches a document to the complaint indicating he was moved from the cell not long after the incident; he does not dispute this fact, nor does he allege he was reinjured by the bolt in the interim. Thus, he has not stated any plausible claims regarding the bolt either.

Dodd also alleges his medical needs were ignored by the officers after he was injured. To establish liability for claims of inadequate medical care, a prisoner must

5

satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

      Here, Dodd alleges he tripped over the bolt causing injuries to his right shin, ankle, and heel, which left him in significant pain. He further alleges Officer Swann and Sergeant Jackson ignored his repeated requests for help for two full days, leaving him sprawled on his cell floor without any medical care. Giving Dodd the inferences to which he is entitled at this stage, he has alleged both an objectively serious medical need and that Officer Swann and Sergeant Jackson were deliberately indifferent to it from March 18, 2019, through March 20, 2019, when he was finally taken to the infirmary by different officers. *See e.g. Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) ("[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering.") (citations and internal quotation marks omitted). Accordingly, Dodd has stated plausible Eighth Amendment claims for monetary damages against Officer Swann and Sergeant Jackson.

That said, nothing in the complaint plausibly suggests any of the named defendants are individually responsible for the alleged lack of continuing medical care. Dodd admits he was taken to medical on March 20, 2019. Once there, a nurse, who is not named as a defendant in this action, gave him Tylenol and an ice pack and told him to elevate his foot. She also ordered an x-ray, which was performed two days later. In documents attached to the complaint, Dodd admits the x-ray was negative for any broken bones, but he alleges the injury continued to bother him because his muscles were torn. He subsequently submitted several health care requests, which resulted in various stretching exercises being prescribed by a different nurse, who is also not named as a defendant, but little else in terms of treatment. However, it is not reasonable to infer that any of the officers knew about, and ignored, those healthcare requests or Dodd's need for continuing care, so he has not stated any claims against them on this basis either. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible.").

Dodd has requested injunctive relief asking that he be examined by a qualified physician and that arrangements be made for further physical therapy by a practitioner with "expertise in the treatment and restoration and function of the plaintiff's right ankle, Achilles tendon, and shin muscle." ECF 1 at 18. In general, the Warden has both the authority and the responsibility to ensure inmates at the facility are provided constitutionally adequate medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). In this case, Dodd describes, in detail, the care he initially received in the month and a half following his injury—pain

medication, ice packs, elevation, and the direction to perform stretching exercises. Based on this information, it is not reasonable to infer he failed to receive adequate medical care during that time period. He goes on to state he filed two additional requests for healthcare in September of 2019 because his injuries had not fully healed and he was still in pain, but the complaint is short on further facts, dates, and specifics regarding that care (or lack thereof). Instead, he simply states "[a]fter (23) months, the plaintiff Mr. Dodd has not been taken to an outside hospital, nor a therapist." ECF 1 at 8. Based on these sparse allegations, it is not plausible to infer he is currently failing to receive adequate care. As noted above, while inmates are entitled to constitutionally adequate medical care, they are "not entitled to demand specific care," *Walker*, 940 F.3d at 965, nor are they entitled to "the best care possible." *Forbes*, 112 F.3d at 267. The fact that Dodd has not been evaluated by an outside provider is insufficient—without additional supporting details regarding his condition in the many months since he alleges he last submitted a health care request—to state a plausible claim for injunctive relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact.") (quotation marks, citations and footnote omitted); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

Finally, Dodd names the Indiana Department of Correction as a defendant, but this state agency has Eleventh Amendment immunity. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019).

For these reasons, the court:

(1) GRANTS Jermaine D'Shann Dodd leave to proceed against Correctional Officer Swann and Sergeant Jackson in their individual capacities for compensatory and punitive damages for being deliberately indifferent to his serious medical needs from March 18, 2019, to March 20, 2019, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES the Indiana Department of Correction, Major Nowatski, and Officer Boyini;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Correctional Officer Swann and Sergeant Jackson at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1), under 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Correctional Officer Swann and Sergeant Jackson to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 9, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT